CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 3 1 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| PAUL ALLEN JENKINS, | ) | CASE NO. 7:18CV00180 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| TAMMY C. B. WILLIAMS, | ) | By: Hon. Glen E. Conrad |
| Respondent. | ) | Senior United States District Judge |

Paul Allen Jenkins, a Virginia inmate proceeding pro se, filed this petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a

judgment in the Alleghany County Circuit Court. Respondent filed a motion to dismiss, and

Jenkins responded, making the matter ripe for disposition. After review of the record, the court

concludes that the petition must be dismissed.

## I.

At the guilty plea hearing, the Commonwealth's Attorney summarized the evidence

against Jenkins as follows:

> On June the 5th, 2014 in Alleghany County, the defendant, Paul Jenkins, had
> planned a robbery and had his wife drop him off at the Kmart store after which
> she drove around to the side of the building to wait for him. The defendant
> entered the Kmart store wearing pantyhose over his face as a mask carrying a
> black BB pistol. He approached the first clerk, Marlena Gordon, showing her the
> gun and demanding the money out of the cash register. He asked her to put it in a
> bag that he was holding. Ms. Gordon was scared and told him she was going to
> pass out. The defendant went to the next clerk, Shawna Lavelette and showed her
> the gun and demanded the money from her as well. After getting no money the
> defendant said if he had to come back he would show them what scared was. He
> hurried out of the door to the waiting van. A customer, Lina Walton, followed the
> defendant out the door and over to the fence and actually took his picture
> climbing over the fence. Mr. Walton heard the defendant yell get the hell out of
> here the cops are coming before getting in the van. Mr. Walton showed the photo
> that he had taken to Corporal Deem from the Alleghany County Sheriff's Office
> who had shown up in response to the call. Corporal Deem was able to see the van
> and he pointed out the direction in which the van travelled. After the defendant
> left the scene in the van he peeled the . . . masking tape off of the license plate that

he had used to cover it and threw it in a parking lot in an apartment complex nearby. He removed his mask, hat, two shirts, and put them in a bag and also threw them out of the car. Virginia State Police and Alleghany County Sheriff's Office responded. Corporal Deem and Trooper Ratliff stopped the defendant's van and found him in the passenger seat with his wife driving. The BB pistol was located in the back, as well as a roll of masking tape. The bag of clothes was later recovered. We have that as evidence and inside the bag was the pantyhose that he had used as a mask and a hat and two shirts. Corporal Deem also found the masking tape, a ball of masking tape that [Jenkins] had thrown out at the apartment complex. After being arrested the defendant confessed in a recorded statement and indicated he had planned the robbery and had bought the gun and the hose at Walmart . . . about three days before the robbery was actually carried out. He said that he was sick and coming off methadone and needed money to buy the drugs to make him feel better.

Trial Tr. 12-14 (March 23, 2016), State Habeas R. 69-71. Jenkins did not object to the Commonwealth's proffer.

Jenkins pleaded guilty, pursuant to a plea agreement, to two counts of attempted robbery and two counts of use of a firearm in the commission of a felony. The Alleghany County Circuit Court convicted Jenkins and sentenced him to twenty years in prison, with eight years suspended. Jenkins did not appeal his convictions, but he did file a state habeas petition in the Supreme Court of Virginia.

## II.    Current Petition

On or around April 23, 2018, Jenkins filed a § 2254 petition, alleging the following claims:

1. the sheriff's office violated his Miranda[1] rights by disregarding his request for counsel and continuing to interrogate him;

2. Jenkins did not validly waive his Miranda rights based on the officer's coercive acts;

3. trial counsel was ineffective for (1) not advising Jenkins of the sentencing guidelines or his potential punishment and (2) not objecting to certain prejudicial issues; and

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

4. the Commonwealth engaged in misconduct by denying Jenkins a medical evaluation to determine his mental state.

Jenkins seeks reversal of his convictions. Jenkins' petition is timely, and this matter is now before the court on Respondent's motion to dismiss.

### III.    Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citations omitted). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). A state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either (1) cause and prejudice or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must establish that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id.

Under Martinez v. Ryan, 566 U.S. 1 (2012), a federal habeas petitioner may satisfy the "cause" requirement of an otherwise procedurally defaulted claim of ineffective assistance if: (1) the ineffective assistance claim is a "substantial" one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the

3

ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 569 U.S. 413, 423 (2013)). A "substantial" claim is one that has merit. Martinez, 566 U.S. at 14.

## IV.     Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).   Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists' could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly

deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).[2] When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

For Strickland's first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

## V.    Guilty Pleas

For guilty pleas, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In general, the United States Court of Appeals for the Fourth Circuit has instructed district courts to dismiss habeas petitions that contradict the plea

---

[2] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Gentry, 540 U.S. at 8.

colloquy. See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."); Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representation he makes under oath during a plea colloquy."). Therefore, to collaterally attack a guilty plea, a petitioner must establish either that (1) counsel was ineffective and that, but for counsel's alleged errors, he would not have pleaded guilty; or (2) the plea itself was not voluntary or intelligent. United States v. Broce, 488 U.S. 563, 574 (1989).

The plea agreement, testimony, and the circuit court's decision to accept Jenkins' guilty pleas "constitute a formidable barrier" to federal habeas relief. Blackledge v. Allison, 431 U.S. 63, 74 (1977). However, the barrier is not insurmountable. Id. at 75. In United States v. White, 366 F.2d 291 (4th Cir. 2004), for example, the Fourth Circuit determined that White's guilty plea was involuntary because counsel wrongfully advised the petitioner that the plea was conditional, and that he could still appeal. Id. at 297-98. Counsel "specifically assured him that entering into that plea would not prevent him from appealing" the court's evidentiary ruling. Id. at 297. However, the plea agreement contained no such provision. Id. at 298. On habeas review, "the Government conceded, and the district court found, that in making this representation, the petitioner's lawyer provided constitutionally ineffective assistance of counsel, which rendered the petitioner's guilty plea involuntary." Id. at 293. The Fourth Circuit held that the record showed that the petitioner's sworn allegations were not "palpably incredible or patently frivolous or false," and thus, the district court could not summarily dismiss the allegations. Id. at 297-98.

## VI.    Discussion

First, the court will address ineffective assistance and involuntary plea arguments in Claims 3 and 4.

In a portion of Claim 3, Jenkins asserts that counsel misadvised him regarding the sentencing guidelines. Specifically, Jenkins alleges that counsel told him that the guidelines dictated a three-to-seven-year sentence, and counsel "tricked" Jenkins into pleading guilty by telling him that the Commonwealth would drop several charges and he would go home soon if he pleaded guilty. On habeas review, the Supreme Court of Virginia dismissed the claim:

> The record, including the written plea agreement petitioner signed before he pled guilty, the trial transcript, the affidavit of counsel, and a letter from counsel to petitioner, which petitioner signed, demonstrates counsel provided petitioner a copy of the sentencing guidelines and advised petitioner of the Commonwealth's plea offer, the risks of proceeding to trial versus accepting the plea agreement, the maximum punishment petitioner faced if he proceeded to trial, and that the judge did not have to sentence him within the guidelines and could go above or below them subject to mandatory minimums and maximums. In petitioner's statements in the written plea agreement, which he affirmed as true during the plea colloquy, petitioner represented that no promises had been made as to any sentence he may receive, that he understood there may be sentence guidelines for the crimes he was charged with, that his lawyer had reviewed any applicable guidelines with him, and that he understood the guidelines were discretionary and did not have to be followed by the court.
> Additionally, the record, including the sentencing transcript and the transcript of a hearing on petitioner's motion for reconsideration, demonstrates the probation officer who prepared the presentence investigation report testified the guidelines recommended a sentencing range of six years, eleven months to ten years, eight months. During allocution, petitioner made no mention of any claimed misunderstanding or misinformation about the sentencing guidelines, but instead said he understood what he had done was wrong and that he had "to pay for it." After sentencing, the court conducted a hearing on a motion for reconsideration of petitioner's sentence filed by counsel. Petitioner testified at that hearing, but again did not claim he had received some prior incorrect information or advice about the sentencing guidelines or his potential sentence. Petitioner did acknowledge he had reviewed the presentence report with counsel. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Jenkins v. Brown, No. 170846, slip op. at 3-4 (Va. Feb. 15, 2018). The state court's decision was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts.

In the plea agreement that Jenkins initialed and signed, he acknowledged: he understood the maximum punishment for the crimes charged and that the guidelines were discretionary; he reviewed the sentencing guidelines with his lawyer, he was entirely satisfied with his lawyer; and he read the plea deal, which represented the full and complete agreement between the Commonwealth and him. Plea Agreement 1-4, State Habeas R. 48-51. Further, at the plea hearing, Jenkins testified that he discussed whether to plead guilty with his attorney; he entered the pleas freely and voluntarily; he understood the maximum punishment for each offense and discussed it with his attorney; he was entirely satisfied with the services of his attorney; he reviewed and understood the plea agreement; and that he understood all of the questions asked him. Plea H'rg 2-4, State Habeas R. 59-61. At his sentencing hearing, Jenkins acknowledged that he understood the penalties for the crimes. Sentencing Hr'g 5 (Nov. 29, 2016), State Habeas R. 131.

After Jenkins alleged ineffective counsel on state collateral review, counsel submitted an affidavit stating that he advised Jenkins of the sentencing guidelines and their voluntary nature, and a letter in which counsel specifically informed Jenkins of the plea deal and guidelines.[3] See Letter from Taylor M. Baker to Paul Allen Jenkins 1, March 23, 2016, State Habeas R. 44. Jenkins signed the letter and thanked counsel "for a chance at life." Id. at 2. Lastly, throughout the proceedings, Jenkins never mentioned that counsel failed to either discuss or provide the

---

[3] Jenkins received the letter and the plea agreement on March 23, 2016. He entered his plea the same day.

sentencing guidelines.[4]

The court concludes that Jenkins' naked allegations that counsel misadvised him regarding the sentencing guidelines are belied by the record. Further, the evidence against Jenkins was overwhelming, and, if he refused the plea agreement, he would have faced additional charges that could have added to his aggregate sentence. Therefore, the court will grant the motion to dismiss as to this portion of Claim 3, because Jenkins fails to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, he would have not pleaded guilty, he would have proceeded to trial, and the outcome of the proceeding would have been different. Hill, 474 U.S. at 59.

In a portion of Claim 3, Jenkins argues that counsel was ineffective for failing to object to a statement made by the Commonwealth's Attorney at a pretrial suppression hearing. Jenkins alleges that the court ordered counsel to retrieve Jenkins' medical records, but that the Commonwealth's Attorney responded that the records were unnecessary, because "the pre-sentence report is what they go by." Pet. 16, ECF No. 1. He alleges the judge responded, "I need it so I can go below the guidelines." Pet. 16. The Supreme Court of Virginia dismissed the claim for failing to offer a valid reason why he should not be bound by his representation at trial that counsel's performance was adequate pursuant to Anderson v. Warden of Powhatan Corr. Ctr., 281 S.E.2d 885 (Va. 1981).[5] Relatedly, in another portion of Claim 3, Jenkins avers that counsel was ineffective for obtaining Jenkins' pharmacy and hospital records before sentencing, but failing to introduce them at the hearing. The Supreme Court of Virginia held that the claim

---

[4] At the hearing on the motion to reconsider his sentence, Jenkins did tell the Commonwealth's Attorney that he did not realize that he could have received a twenty-six year sentence. Mot. Hr'g 10 (Nov. 29, 2016), State Habeas R. 136. However, in counsel's letter, counsel listed out the charges and their potential sentences.

[5] The respondent argues that Anderson constitutes an independent and adequate state ground for procedural default; however, district courts have declined to treat Anderson as such. Mangum v. Clarke, No. 7:11CV00205, 2011 WL 4737418, at *1 (W.D. Va. Oct. 6, 2011). Federal courts require a similar high standard of clear and convincing evidence to undermine a guilty plea, though. See Fields, 956 F.2d at 1299.

failed both prongs of <u>Strickland</u>: "Petitioner fails to articulate what his pharmacy and hospital records would have shown and how they would have benefitted him at sentencing." <u>Jenkins v. Brown</u>, No. 170846, slip op. at 5. The court agrees with the state court's rulings.

Despite Jenkins' complaints, the circuit court heard a great deal about his medical history. Jenkins testified about his medical history and drug use during the course of his criminal proceedings, and the prosecution did not object. Jenkins informed the judge that, at the time he committed the crimes, he had been suffering withdrawal from methadone, he was physically and mentally sick, and he felt out of options because he had no pills, money, or ability to receive medical care.[6] He also informed the court that he had had addiction problems for much of his life, and that he previously left prison addicted to heroin.

Jenkins fails to sustain the claims because he has not proffered what specific evidence counsel should have introduced. Such a failure to proffer is fatal. <u>See</u> <u>Beaver v. Thompson</u>, 93 F.3d 1186, 1195 (4th Cir. 1996) (failure to proffer what favorable evidence or testimony would have been produced is fatal to an allegation of inadequate investigation); <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1135 (4th Cir. 1992) <u>abrogated on other grounds by</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 165-66 (1996) (<u>habeas</u> petitioner must present evidence supporting his claims). Therefore, the court will grant the motion to dismiss as to these portions of Claim 3, because Jenkins fails to demonstrate a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty, he would have proceeded to trial, and the outcome of the proceeding would have been different. <u>Hill</u>, 474 U.S. at 59.

In a portion of Claim 3, Jenkins alleges that counsel was ineffective for failing to challenge the gun charges on the ground that the store clerks were not intimidated by the fake

---

[6] Jenkins testified that a hospital refused to admit him because he did not have insurance and the hospital did not treat withdrawal.

firearm. On habeas review, the Supreme Court of Virginia rejected the claim pursuant to Anderson. Although Anderson is not directly applicable on federal habeas review, Jenkins fails to proffer clear and convincing evidence contradicting his plea colloquy; in fact, Jenkins does not present any such evidence. See Fields, 956 F.2d at 1299; Nickerson, 971 F.2d at 1135.

Furthermore, he has not satisfied either prong of Strickland. Jenkins argues that one of the clerks was not afraid and refused to give Jenkins any money because she knew that Jenkins had a toy weapon. In his affidavit, counsel states that he "repeatedly explained" to Jenkins that a replica firearm, as applied by Virginia caselaw, was sufficient for conviction.[7] Baker Aff. 1, State Habeas R. 41-43. Also, the trial court noted Jenkins' threatening manner because Jenkins put on a mask, raised his toy gun, and demanded money, and one of the clerks was severely distressed. See Trial Tr. 12, State Habeas R. 69 (The Commonwealth's Attorney, in summarizing the evidence, stated that the first clerk "was scared and told [Jenkins] she was going to pass out."); Sentencing Hr'g Tr. 14 (The court stated: "You scared the heck out of those women." Jenkins responded: "And believe me when I tell you I'm sorry for that."); Sentencing Hr'g Tr. 33-34 (Jenkins testified: "[The first cashier] was crying. Telling another person to go get the manager." He also stated that he knew the clerk was nervous, that he had scared her, that "[s]he was freaking out," and that she said "[S]ir I'm very nervous. I'm about ready to pass out."). Therefore, the court will grant the motion to dismiss as to this portion of Claim 3, because Jenkins fails to proffer clear and convincing evidence contradicting his plea, and he has not demonstrated a reasonable probability that, but for counsel's alleged errors, he would not

---

[7] "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery." Va. Code § 18.2-53.1; see also Holloman v. Commonwealth, 269 S.E.2d 356, 358 (Va. 1980) (finding the Commonwealth's evidence sufficient to convict under Va. Code § 18.2-53.1 when "defendant employed an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder").

have pleaded guilty, he would have proceeded to trial, and the outcome of the proceeding would have been different. Hill, 474 U.S. at 59.

In a portion of Claim 4, Jenkins contends that counsel was ineffective for failing to object to the trial court's refusal to retrieve his pharmacy and hospital records, failing to adequately investigate Jenkins' medical history, and failing to investigate and/or argue regarding the Alleghany County Sheriff's Department's denial of medical treatment to Jenkins prior to interrogation. On habeas review, the Supreme Court of Virginia held that the claim satisfied neither Strickland prong: "Petitioner fails to articulate what a mental health evaluation would have shown or how it would have benefitted him at sentencing." Jenkins v. Brown, No. 170846, slip op. at 5. The court agrees with the state court's opinion. Jenkins fails to proffer any specific evidence or testimony that a proper investigation would have discovered. Such a failure is fatal to his claim. Beaver, 93 F.3d at 1195. Therefore, the court will grant the motion to dismiss as to this portion of Claim 4.

In a portion of Claim 4, Jenkins alleges that the prosecution committed misconduct by denying him medical records and a medical evaluation. On habeas review, the Supreme Court of Virginia rejected the claim pursuant to Anderson. Once again, Anderson does not apply; however, Jenkins fails to show that his guilty plea was involuntary by clear and convincing evidence. Furthermore, Jenkins's allegations are factually sparse and unspecific. Jenkins personally testified as to his mental and physical health, and he has not proffered evidence demonstrating what the medical records and the medical evaluation would have shown. Such a failure is fatal to his claim. See Beaver, 93 F.3d at 1195. Therefore, the court will grant the motion to dismiss as to this portion of Claim 4.

Meanwhile, Claims 1 and 2 implicate Jenkins' Miranda rights. On habeas review, the Supreme Court of Virginia found the claims barred under Peyton v. King, 169 S.E.2d 569, 571 (Va. 1969), because a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. Jenkins v. Brown, No. 170846, slip op. at 1. Although Peyton does not apply, the court agrees with the state court's decision pursuant to Mabry v. Johnson, 467 U.S. 504 (1984). See Mabry, 467 U.S. at 508 ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Claims 1 and 2 do not undermine the voluntariness or intelligence of his guilty pleas, or the competence of counsel, and Jenkins fails to otherwise undermine the validity of his guilty pleas. Therefore, the claims are not cognizable on federal review, and the court will grant the motion to dismiss as to Claims 1 and 2. See id.

In a non-Strickland portion of Claim 3, Jenkins asserts that the witnesses' identification of him in court was unduly suggestive. On habeas review, the Supreme Court of Virginia rejected the argument pursuant to Peyton and Anderson. The court agrees with the state court's decision. Jenkins fails to present any evidence that the identification was unduly suggestive, and the evidence against Jenkins was overwhelming. Therefore, the court will grant the motion to dismiss as to this portion of Claim 3, because Jenkins fails to present clear and convincing evidence that his guilty plea was not voluntary, and he has not demonstrated a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty, he would have proceeded to trial, and there was a reasonable likelihood of success.

In another non-Strickland portion of Claim 3, Jenkins argues that the prosecution violated his Fourteenth Amendment rights by requesting a verbal order that no more continuances be granted to Jenkins' counsel. However, the claim is simultaneously exhausted and defaulted

because Jenkins failed to raise it in the Supreme Court of Virginia. See Baker, 220 F.3d at 288. Jenkins has not excused the default: he has not established cause and prejudice, a fundamental miscarriage of justice, or the requirements of Martinez.[8]  Furthermore, Jenkins fails to proffer clear and convincing evidence contradicting his plea colloquy.  Therefore, the court will grant the motion to dismiss as to this portion of Claim 3.

## VII.   Conclusion

For the reasons stated, the court will grant the motion to dismiss.  The petition is partially procedurally defaulted and otherwise without merit.  An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Jenkins and to counsel of record for Respondent.

ENTER: This 30th   day of October, 2018.

_____
Senior United States District Judge

---

[8] Only a non-Strickland claim was procedurally defaulted.  Therefore, Martinez is not applicable.  See Fowler, 753 F.3d at 461 (requiring the defaulted claim to be one of ineffective assistance of counsel).